**In re Harry C. DECKLER.**

No. 92–1110.

United States Court of Appeals,
Federal Circuit.

Oct. 14, 1992.

Rehearing Denied; Suggestion for
Rehearing In Banc
Declined Nov. 25, 1992.

Fred S. Lockwood, Lockwood, Alex, Fitzgibbon & Cummings, of Chicago, Ill., argued for appellant. With him on the brief was Raymond M. Mehler.

Fred E. McKelvey, Office of the Sol., Arlington, Va., argued for the appellee. With him on the brief were Richard E. Schafer and Jameson Lee.

Before NIES, Chief Judge, FRIEDMAN, Senior Circuit Judge, and MAYER, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The sole issue in this appeal from the Board of Patent Appeals and Interferences (Board), is whether the Board correctly ruled that the losing party in an interference proceeding was not entitled to a patent covering claims that that party admits are patentably indistinguishable from the claim involved in the interference. We affirm.

I

The appellant Deckler seeks a patent for an improved seed planter. In an interference proceeding under the "old" rules between Deckler and Grataloup, involving a claim the examiner had suggested to Deckler, the Board awarded priority of invention to Grataloup. The Board determined that although Deckler was first to reduce the invention to practice, he suppressed the invention until after Grataloup's priority date obtained by filing a foreign patent application. Grataloup subsequently was issued a patent on his invention, Claim 11 of which corresponds to the interference count.

Deckler's application was returned to ex parte prosecution. The examiner rejected all remaining claims, giving numerous grounds for rejection. In Deckler's appeal of claims 1–9, the Board reversed all but one of the rejections. The Board affirmed the examiner's rejection of claims 1 through 3 and 7 on the ground that the decision in the interference precluded Deckler from allowance of those claims, because they define the same invention as the interference count.

In his opening brief, Deckler challenged both the Board's conclusion that "the subject matter of claims 1 through 3 and claim 7 are not patentably distinct from the subject matter of the lost count," and the rejection based on estoppel by judgment. In his reply brief and at oral argument, however, Deckler withdrew the first con-

tention, thereby in effect conceding that the claims on appeal are not patentably distinct from the interference count. The sole issue on appeal therefore is the propriety of the rejection of his claims based on the preclusive effect of the interference judgment.

## II

A. 1. In rejecting Deckler's claims, the examiner relied on the Board's decision in *Ex parte Tytgat*, 225 USPQ 907 (Bd.Pat. App.Int.1985). In that case, Tytgat, like Deckler here, lost in an interference proceeding in which priority was awarded to the other party based on a foreign application filing date, and his application was returned to ex parte prosecution. The examiner rejected all remaining claims "on the ground of judicial doctrine and/or interference estoppel." *Id.* at 908.

An augmented Board panel upheld the rejection. *Id.* at 909. It first concluded that the subject matter of Tytgat's claims on appeal was "not patentably distinct" from the subject matter of the interference counts on which he lost. *Id.* at 910. The Board stated that "if a patent containing [Tytgat's] claims on appeal is issued to Tytgat, those claims and at least [four] claims ... of [the interfering patent] would define a single inventive concept (i.e., would not be patentably distinct)." *Id.* The Board then explained its rationale for relying on the judgment in the interference and "general principles of res judicata and collateral estoppel" to reject Tytgat's claims:

> We think it most unlikely that Congress could have intended for two patents to be issued to different parties for a single inventive concept. Thus, we think it unlikely that Congress could have intended for a patent to be issued to Tytgat under the circumstances present here.

*Id.* at 911.

The rejection avoided the undesirable result that "if the judgment involving the 'lost' counts of the ... interference cannot be used to reject the claims on appeal, a *second* interference will have to be de-

clared between those claims and the claims of the [interfering] patent." *Id.* (emphasis in original). The second interference would involve a priority dispute over the same patentable subject matter to which the winning party was awarded priority in the first interference. The Board concluded that such a result would be unfair to the winning party in the original interference, and would be inconsistent with the general principle of res judicata that a judgment should settle finally all issues that were decided or should have been decided. *Id.* at 912–13.

2. In the present case, as in *Tytgat*, the Board relied on the judgment in the interference to reject claims patentably indistinct from the lost count. The Board concluded that

> if the judgment involving the "lost" count of the interference can not be used to reject claims 1 through 3 and 7 which are not patentably distinct from the lost count, a second interference will have to be declared between those claims and the claims of Grataloup. Furthermore, this interference would be declared with respect to subject matter identical to the subject matter of the count in the original Deckler/Grataloup interference.

Deckler acknowledged at oral argument that the count in a second interference between Deckler and Grataloup involving Deckler's claims 1–3 and 7 would be the same as the count in the first interference.

3. The judgment in the interference in this case awarded Grataloup priority of invention over Deckler—a result Deckler does not challenge—and resulted in the issuance of a patent to Grataloup that included the claim corresponding to the interference count. Since Deckler has in effect conceded that the subject claims in his application are patentably indistinguishable from his claim corresponding to the interference count, the Board properly concluded that the interference judgment barred Deckler from obtaining a patent containing those claims. As the Court of Customs and Patent Appeals pointed out in *Aelony v. Arni*, 547 F.2d 566, 570, 192 USPQ 486, 490 (CCPA 1977), "[s]ections 102, 103, and

135 of 35 U.S.C. clearly contemplate—where different inventive entities are concerned—that only one patent should issue for inventions which are either identical to or not patentably distinct from each other." The court also noted that the patent statute intends that "only one patent should issue for one inventive concept." *Id.*

The Board's decision that the interference judgment bars Deckler from obtaining a patent for claims that are patentably indistinguishable from the claim on which Deckler lost the interference constituted a permissible application of settled principles of res judicata and collateral estoppel. Under those principles, a judgment in an action precludes relitigation of claims or issues that were or could have been raised in that proceeding. *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427–28, 69 L.Ed.2d 103 (1981); *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979); *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 475–76, 20 USPQ2d 1241, 1246 (Fed.Cir.1991). Similarly, this court has applied interference estoppel to bar the assertion of claims for inventions that are patentably indistinct from those in an interference that the applicant had lost. *In re Kroekel*, 803 F.2d 705, 231 USPQ 640 (Fed. Cir.1986); *Woods v. Tsuchiya*, 754 F.2d 1571, 225 USPQ 11 (Fed.Cir.), *cert. denied*, 474 U.S. 825, 106 S.Ct. 81, 88 L.Ed.2d 67 (1985).

The interference judgment conclusively determined that, as between Deckler and Grataloup, Grataloup was entitled to claim the patentable subject matter defined in the interference count. It is therefore proper, and consistent with the policies of finality and repose embodied in the doctrines of res judicata and collateral estoppel, to use that judgment as a basis for rejection of claims to the same patentable invention.

The Board correctly noted the unfortunate consequences that would follow if the interference judgment were not given that preclusive effect. There would be a second interference between Deckler's claims "and the claims of Grataloup. Furthermore, this interference would be declared with respect to subject matter identical to the subject matter of the count in the original Deckler/Grataloup interference." The Board should not be required to conduct such an unfair and cumbersome process unless the governing statutes, regulations or judicial decisions compel it. We discern nothing in them that so requires.

4. Deckler argues that because 35 U.S.C. § 135(a) states that the Commissioner "may" declare an interference, it does not follow that a second interference would necessarily ensue. The Commissioner, however, has stated that such an interference would be declared, and we have no reason to reject that conclusion. Since both Deckler and Grataloup would have claims defining the same patentable subject matter, only an interference could determine priority of invention with respect to them.

B. Deckler contends that three decisions of our predecessor court, the Court of Customs and Patent Appeals, the decisions of which bind us, *South Corp. v. United States*, 690 F.2d 1368, 1369–71, 1 Fed.Cir. (T) 1, 1–3, 215 USPQ 657, 657–58 (1982) (in banc), require a contrary conclusion. Although the factual situations out of which those cases developed are similar to the situation in the present case, the grounds of decision in those cases were quite different from those of the Board in the present case. Those cases do not control this case, and we decline to extend their reasoning to require rejection of the Board's rationale in the present case.

The first case was *In re Hilmer*, 359 F.2d 859, 149 USPQ 480 (CCPA 1966). Habicht was awarded priority over Hilmer in an interference, based on Habicht's foreign filing date, which was earlier than Hilmer's United States filing date. The Board then upheld the examiner's subsequent rejection of Hilmer's remaining claims as obvious under 35 U.S.C. § 103. The Board relied primarily on the Habicht disclosures, which it held 35 U.S.C. § 119 made prior art because of Habicht's earlier foreign filing date.

The Court of Customs and Patent Appeals reversed. Noting that the Board had concluded that "the foreign priority date of a U.S. patent is its effective date as a reference," *id.* at 870, 149 USPQ at 489, the court held that "section 119 does not modify the express provision of section 102(e) that a reference patent is effective as of the date the application for it was 'filed in the United States.'" *Id.* at 861, 149 USPQ at 482. The court remanded the case for the Board to clarify its position on two other claims in the application, the validity of which the Board did not decide. *Id.* at 884, 149 USPQ at 501.

The second case grew out of the remand, in which the Board rejected as obvious Hilmer's two other claims, on the ground that the subject matter of claim 1 of Habicht's patent was prior art under 35 U.S.C. §§ 102(g), 119, and 104 as of Habicht's foreign filing date. The Court of Customs and Patent Appeals again reversed. *In re Hilmer*, 424 F.2d 1108, 165 USPQ 255 (CCPA 1970). Noting that "the rejection here is under § 103 for obviousness," *id.* at 1110, 165 USPQ at 257, the court held that the subject matter of Habicht's claim was prior art under section 102(g), if at all, as of Habicht's U.S. filing date, and could not in fact be prior art with respect to Hilmer because Hilmer's U.S. filing date preceded Habicht's. *Id.* at 1110, 1112–13, 165 USPQ at 256, 258–59.

In the third case, *In re McKellin*, 529 F.2d 1324, 188 USPQ 428 (CCPA 1976), the "sole issue" before the court was "whether claims may be rejected under 35 U.S.C. § 103 on the ground that a losing party to an interference is not entitled to claims which are asserted to be obvious variations of the invention defined in the counts, when section 102(g) and interference estoppel are not applicable." *Id.* at 1325, 188 USPQ at 430.

McKellin had lost an interference in which the winning party prevailed solely on the basis of a foreign priority date. The Board rejected McKellin's remaining claims under section 103 as unpatentable in view of the counts of the interference or in view of the disclosure of the interfering patent.

The court reversed, holding that because the interference was decided solely on the basis of the winning party's right to the benefit of an earlier foreign filing date, there was no "*statutory* basis for finding that either the subject matter of the lost counts or the disclosure of the [interfering] patent is prior art, in the sense of 35 U.S.C. § 103, to [McKellin]." *Id.* at 1329, 188 USPQ at 434 (emphasis in original). In so holding, the court also rejected the Commissioner's theory that the count was statutory prior art under 35 U.S.C. § 135(a) for purposes of section 103. *Id.* at 1327, 188 USPQ at 432.

In a concurring opinion, Judge Rich, the author of the two prior *Hilmer* opinions, "emphasize[d] that there clearly is no rejection before us other than a § 103 obviousness rejection." *Id.* at 1334, 188 USPQ at 437.

The issue in each of those cases was the validity of an obviousness rejection based upon the Board's holdings, on various grounds in the different cases, that under the governing statute the foreign filing date could not be used to make the patent prior art for obviousness purposes.

In the present case, in contrast, there was no obviousness rejection. The Board's sole ground of rejection was that under principles of res judicata and collateral estoppel, Deckler was not entitled to claims that were patentably indistinguishable from the claim on which he lost the interference. Indeed, in this case, the Board, citing *McKellin*, reversed the examiner's "rejections based on obviousness where Grataloup is used in a rejection under § 103, inasmuch as the lost count is not a bar to appellant's claims and Grataloup is not prior art with respect to appellant."

Unlike the situation in those three cases, here the Board did not use the interference count as prior art in making an obviousness determination, but based its decision on a wholly different theory. We decline to extend those decisions to the different issue in this case.

**CONCLUSION**

The decision of the Board is AFFIRMED