In re Stephen P. McGREW.

No. 96–1042.

United States Court of Appeals,
Federal Circuit.

Aug. 7, 1997.

Edward W. Bulchis, Seed & Berry, Seattle, WA, argued, for appellant.

Nancy J. Linck, Solicitor, U.S. Patent and Trademark Office, Washington, DC, argued, for appellee. With her on the brief were Albin F. Drost, Deputy Solicitor, Joseph G. Piccolo and Richard Torczon, Associate Solicitors.

Before RICH, PLAGER, and CLEVENGER, Circuit Judges.

RICH, Circuit Judge.

Stephen McGrew (McGrew) appeals from the decision of the United States Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences (Board) affirming the examiner's rejection of claims 32, 33, 35, 36, 38, 39, 48–53 and 55, in patent application Serial No. 07/798,280, filed November 20, 1991, for "Surface Relief Holograms and Holographic Hot–Stamping Foils and Methods of Fabricating the Same" ('280 application). The claims were rejected on the sole ground that they are barred under 35 U.S.C. § 135(b) (1994) because they were not made within one year of the granting of a United States patent claiming the same or substantially the same subject matter. We *affirm*.

## BACKGROUND

The '280 application is generally directed to a method of manufacturing surface relief holograms and of creating a hot-stamping foil which may be used to apply holograms and other diffractive patterns to surfaces to provide decorative effects involving spectral colors and the illusion of texture, depth and motion.

The '280 application is the end result of a series of continuation applications, the first of which was filed June 20, 1983. The claims at issue were presented to the examiner by amendment on October 27, 1992. Therein, McGrew also brought to the examiner's attention United States Patent No. 4,856,857 which issued on August 15, 1989, to Takeuchi et al. (Takeuchi patent), stating:

Applicant's contention that the claimed invention is patentable is supported by the fact that substantially the same claims

were issued in [the Takeuchi patent].... The application for [the Takeuchi patent] claims a first priority date of May 7, 1985 while applicant's claims are supported by a parent application filed June 20, 1983.

Thus, McGrew contended that his invention was prior to Takeuchi's, as indeed it was. In response, the examiner rejected the claims under section 135(b) as being statutorily barred by the issuance of a patent to Takeuchi, McGrew having presented his claims here in issue more than three years thereafter. The examiner noted that "[a]pplicant concedes 'the fact that substantially the same claims [as the pending claims]' were issued in [the Takeuchi patent]." McGrew appealed the rejection to the Board, which affirmed, and now appeals to us.

The statute here involved, section 135(b), reads as follows:

§ 135 *Interferences*

. . . .

(b) A claim which is the same as, or for the same or substantially the same subject matter as, a claim of *an issued patent* may not be made in any application unless such a claim is made *prior to one year* from the date on which the patent was granted. [Emphasis added.]

### *Board Decision*

On July 24, 1995 a Board panel comprising both the Chief and Vice Chief Administrative Patent Judges affirmed the examiner's rejection of the claims, noting that "[a]ppellant acknowledges that the claims on appeal all stand or fall together, and concedes that ... the claims are to the same or substantially the same subject matter as claimed in the Takeuchi patent and were not made prior to one year from the date on which that patent was granted."

In order to grant appellant the relief he requested, the Board indicated that it would either have to overturn the rejection and potentially allow a second patent to issue on the same invention or it could declare an interference, which would then have to be decided. The Board found the first course of action barred by the fundamental proposition that only one patent should issue for inventions which are identical to or not patentably distinct from each other, as stated in *In re Deckler*, 977 F.2d 1449, 1451, 24 USPQ2d 1448, 1449 (Fed.Cir.1992). It held that it would be unacceptable for the PTO knowingly to permit two patents to issue for the same invention in violation of the basic premise that only one valid patent can issue on the same invention.

The Board found the second course of action—declaring an interference—barred by the plain language of the statute, noting that section 135(b) was intended by Congress to be "a statute of repose ... to be a statute of limitations, so to speak, on interferences so that the patentee might be more secure in his property right," as our predecessor court stated in *Corbett v. Chisholm*, 568 F.2d 759, 765, 196 USPQ 337, 342 (Cust. & Pat.App. 1977).

In light of these two fundamentals, the Board concluded that it could not grant the appellant relief and also noted that it could not follow *In re Sasse*, 629 F.2d 675, 207 USPQ 107 (Cust. & Pat.App. 1980), *insofar* as it *may* have held to the contrary, on a portion of which the McGrew arguments are principally based.

### DISCUSSION

■ We review the Board's construction of 35 U.S.C. § 135(b), *de novo* as statutory interpretation is a question of law. *In re Kathawala*, 9 F.3d 942, 945, 28 USPQ2d 1785, 1786 (Fed.Cir.1993). We review the Board's findings in appeals from the PTO under a "clearly erroneous" standard. *In re Kemps*, 97 F.3d 1427, 1429–31, 40 USPQ2d 1309, 1312–13 (Fed.Cir.1996).

■ The Board's construction of the statutory provision at issue in this case, section 135(b) quoted above, was correct. McGrew argues that the statute is inapplicable *in the ex parte context*, citing *In re Sasse* for its statement that section 135(b) applies only to interference proceedings and cannot be used by the PTO as the ground of an ex parte rejection. However, this was not the sole reason in *Sasse* for reversing the section 135(b) rejection. We also reversed the sec-

tion 135(b) rejection in *Sasse* because the applicant in that case was not claiming "the same or substantially the same subject matter as, a claim of an issued patent." The "issued patent" in that case claimed the genus, while the appealed claims of the *Sasse* application were directed to species within that genus. Specifically, we stated that "[c]laims to a genus and claims to species within it are not claims to the same or substantially the same subject matter in the sense of § 135(b).... Section 135(b) is not applicable." *In re Sasse*, 629 F.2d at 680, 207 USPQ at 111.

Unlike *Sasse*, McGrew has conceded that the claims at issue in the '280 application are for "the same or substantially the same subject matter" as the claims of the Takeuchi patent. Further, McGrew has conceded that the claims at issue were first presented more than one year after the Takeuchi patent was granted. Hence, under the plain language of the statute the rejection under section 135(b) clearly seems proper. Thus, *Sasse* and this case are distinguishable on an essential fact.

McGrew, however, bases this appeal on some language in *Sasse* which is alleged to be controlling on this court as precedent which we shall quote presently. But first an explanation of the situation in that case. At issue was the patentability of claims 1–13 to herbicides. They had been rejected by the PTO on two separate grounds: anticipation by a patent to Guillot under 35 U.S.C. § 102(b) and statutorily time barred under section 135(b). On appeal, our predecessor court, the Court of Customs and Patent Appeals (CCPA), affirmed the section 102(b) rejection which disposed of the issue of patentability. Although it need not have done so, the court first discussed in its opinion the other rejection, based on statutory "estoppel by reason of laches" under section 135(b) in not having timely copied claims from the Guillot patent for interference, reversing that rejection for two clearly different reasons, so that the final decision in the case, *affirming* the PTO, rested entirely on section 102(b). Thus, it may plausibly be said that the entire discussion of the section 135(b) rejection was unnecessary to the decision and therefore dictum. That is the PTO solicitor's position in the present case.

The specific language in *Sasse* on which McGrew principally relies is the following: The solicitor states, "there can be no serious doubt at this time that 35 U.S.C. § 135(b) operates to effect a kind of statutory bar, estoppel or loss of right." We agree that a procedural statutory bar arises proscribing the instigation of interferences after a specified interval. But we do not agree that a substantive bar is raised by § 135(b) in an ex parte context. By "in an ex parte context" we seem to have implied that the PTO could not use noncompliance with section 135(b) to support an ex parte rejection where the applicant was not asking for an interference. If so, we no longer agree with that interpretation and believe the Board correctly declined to apply it in this case. If persons in McGrew's position could copy claims from issued patents beyond the time when an interference could be declared and obtain patents on them simply on the grounds that they are prior inventors and did not know about the patent in time to contest an interference, section 135(b) would not be effective as a statute of repose.

This brings us to the question whether this panel may now disregard our statement in the *Sasse* opinion as dictum. This court recently dealt with the question of what is dictum in *King v. Erickson*, 89 F.3d 1575, 1581 (Fed.Cir.1996). It was there held, with citation of authority, that dictum consists, inter alia, of statements in judicial opinions upon a point or points not necessary to the decision of the case. (*See also* the opinion of Judge Posner in *United States v. Crawley*, 837 F.2d 291 (7th Cir.1988), devoted entirely to what is dictum.) In the light of these precedents, it is our opinion, and we so hold, that the portions of the *Sasse* opinion relied on by McGrew are dicta. As Judge Posner put it, the effect of that is "that a dictum is not authoritative. It is the part of an opinion that a later court, even if it is an inferior court, is free to reject." There are at least two reasons why we hold that our statement that section 135(b) was inapplicable to ex parte rejections is dictum. First, the entire

discussion of section 135(b) was unnecessary to the decision that Sasse's claims 1–13 were unpatentable under section 102(b), which was the dispositive holding. Second, within the discussion of section 135(b) itself, we observed that Sasse's claims were not for the subject matter of any of the Guillot patent claims, wherefore section 135(b) had no applicability anyway, even if it had not been an ex parte situation.

### CONCLUSION

We therefore answer McGrew's four contentions, stated in his brief as issues, as follows:

1. The Board did not err in refusing to follow *Sasse* as "precedent" because the aspect of that case relied on, being dictum, is not "precedent" which we must follow.

2. The application of section 135(b) is not limited to inter partes interference proceedings but may be used, in accordance with its literal terms, as a basis for ex parte rejections.

3. This panel disagrees with the dictum in *Sasse* that section 135(b) is inapplicable to ex parte proceedings.

4. This court need not go in banc to affirm the Board, and we hereby do so.

*AFFIRMED.*