NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BOOM! PAYMENTS, INC.,**
*Plaintiff-Appellant*

v.

**STRIPE, INC., SHOPIFY (USA) INC., SHOPIFY INC.,**
*Defendants-Appellees*

---

2020-1274

---

Appeal from the United States District Court for the Northern District of California in No. 3:19-cv-00590-VC, Judge Vince Chhabria.

---

Decided:  January 13, 2021

---

BENJAMIN T. WANG, Russ August & Kabat, Los Angeles, CA, for plaintiff-appellant.  Also represented by AMY HAYDEN, THERESA MARY TROUPSON.

JARED BOBROW, Orrick, Herrington & Sutcliffe LLP, Menlo Park, CA, for defendant-appellee Stripe, Inc.  Also represented by MARGARET ABERNATHY, Los Angeles, CA; MELANIE L. BOSTWICK, Washington, DC.

MICHAEL RENAUD, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC, Boston, MA, for defendants-appellees Shopify (USA) Inc., Shopify Inc. Also represented by PETER F. SNELL, New York, NY.

_____

Before LOURIE, O'MALLEY, and REYNA, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Boom! Payments, Inc. ("Boom") appeals from a decision of the United States District Court for the Northern District of California holding that the claims of U.S. Patents 8,429,084 ("'084 patent"), 9,235,857 ("'857 patent"), and 10,346,840 ("'840 patent") are ineligible for patent under 35 U.S.C. § 101. *See Boom! Payments, Inc. v. Stripe, Inc.*, No. 3:19-cv-00590-VC, 2019 WL 6605314 (N.D. Cal. Nov. 19, 2019) ("*Decision*"). Because we agree with the district court that the patents claim patent-ineligible subject matter, we *affirm*.

## BACKGROUND

Boom owns the '084, '857, and '840 patents (collectively "the asserted patents"), which are generally directed to systems and methods for confirming that a transaction has been consummated prior to releasing electronic payment.[1] The patents explain that, in some circumstances, buyers and sellers may not wish to exchange payment directly at the time of a transaction. For example, where a buyer and seller are connected through an online platform, such as Craigslist, but meet in person to exchange goods, the buyer may not wish to authorize payment before the parties have met and the buyer has an opportunity to inspect and take possession of the goods. Alternatively, small businesses

_____

[1] Because the '084, '857, and '840 patents share the same written description, all citations are to the '084 patent unless specified otherwise.

may prefer to use a third party to process electronic payments rather than accept payment directly. In both situations, the patent explains, "some way is needed to reliably confirm that a local marketplace transaction has been consummated to facilitate reliable online payment consummation." '084 patent col. 2 ll. 59–61.

The patents purport to solve this problem by providing an Internet-based system, such as an online marketplace, that facilitates payments between buyers and sellers. Buyers can search for items in the online marketplace and tentatively agree to purchase an item from a particular seller for a negotiated price. To initiate the transaction, the buyer provides payment information to the system, such as credit or debit card information, which is stored in a database. *Id.* col. 5 ll. 6–15. A unique "buyer identifier" is then generated and provided to the buyer. Once the transaction has been consummated, such as when the buyer and seller physically meet and the buyer accepts the items from the seller, the buyer provides the buyer identifier to the seller. *Id.* col. 7 ll. 3–8. The seller then provides the buyer identifier to the online marketplace as evidence that the transaction has been consummated, and payment is authorized. *Id.* col. 7 ll. 9–29.

Claim 1 of the '840 patent is illustrative and recites:

1. An Internet-based computer system for confirming that a proposed sale transaction has been consummated, said Internet-based computer system including a payment processor system comprising at least one computer device programmed to:

receive a buyer's payment information and store said payment information;

prior to a sale of an at least one item associated with an online store of a seller to said buyer, receive, at said payment processor system, a request transmitted from a buyer computer device for said

> buyer to be able to purchase at least one item offered for sale by said online store;
>
> in response to said request, generate a transaction-specific buyer acceptance identifier comprising a combination of human-readable characters;
>
> provide said transaction-specific buyer acceptance identifier to said buyer computer device;
>
> store in computer-accessible memory associated with said payment processor system a record comprising a relationship between said transaction-specific buyer acceptance identifier, a buyer-specific identifier, and a seller-specific identifier;
>
> receive from a seller computer device an identifier of the transaction, an identifier of the buyer, and an identifier of the seller;
>
> compare the identifier of the transaction with the transaction-specific buyer acceptance identifier;
>
> compare the identifier of the buyer with the buyer-specific identifier;
>
> compare the identifier of the seller with the seller-specific identifier; and
>
> if said identifier of the transaction corresponds to the transaction-specific identifier, said identifier of the buyer corresponds to the buyer-specific identifier, and said identifier of the seller corresponds to the seller-specific identifier, charge an account associated with the buyer for an amount associated with the request to purchase at least one item offered for sale by said online store.

'840 patent col. 24 l. 61–col. 25 l. 34.

Boom asserted the '084 and '857 patents against Stripe, Inc., Shopify (USA) Inc., and Shopify Inc. (collectively "Stripe") in the United States District Court for the

Northern District of California, alleging infringement of "at least" claim 7 of each patent. *See* Complaint & Jury Demand, *Boom! Payments, Inc. v. Stripe, Inc.*, No. 3:19-cv-00590-VC (N.D. Cal. Feb. 1, 2019), ECF No. 1. Stripe moved to dismiss Boom's complaint under Fed. R. Civ. P. 12(b)(6), arguing that the patents claim subject matter ineligible under 35 U.S.C. § 101. *See* Motion to Dismiss, *Boom! Payments, Inc. v. Stripe, Inc.*, No. 3:19-cv-00590-VC (N.D. Cal. April 29, 2019), ECF No. 32. In response, Boom sought leave to amend its claim, which the district court granted, and added counts alleging infringement of "at least" claim 1 of the '840 patent, which had issued since Boom filed its initial complaint. *See* Amended Complaint, *Boom! Payments, Inc. v. Stripe, Inc.*, No. 3:19-cv-00590-VC (N.D. Cal. July 10, 2019), ECF No. 44. Stripe again moved to dismiss. Stripe argued that the three claims identified in Boom's amended complaint are representative of all claims of the asserted patents and that the amended complaint should therefore be dismissed with respect to all claims. *See* Motion to Dismiss Plaintiff's First Amended Complaint, *Boom! Payments, Inc. v. Stripe, Inc.*, No. 3:19-cv-00590-VC (N.D. Cal. Aug. 12, 2019), ECF No. 51.

The district court considered the claims under the Supreme Court's two-step *Alice* framework for determining patent eligibility, specifically addressing the three claims identified in Boom's amended complaint. At step one, the court observed that the claims "combine the concept of escrow—using a third party to hold payment until a condition is satisfied—with the idea of using identification codes to authorize a transaction" and concluded that the claims are directed to the abstract idea of authenticating Internet sales through the use of a third-party intermediary. *Decision*, 2019 WL 6605314, at \*1. At step two, the court determined that the claims do not recite an inventive concept sufficient to transform them into patent-eligible subject matter because they merely describe a computerized escrow system. *Id.* The court rejected Boom's argument that

factual allegations in its complaint preclude dismissal under Rule 12(b)(6), specifically finding that Boom's allegations are legal conclusions that the court is not bound to accept or are otherwise of no consequence to the eligibility analysis. Accordingly, the court granted Stripe's motion to dismiss.

Boom appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review the grant of a motion to dismiss under the law of the regional circuit. *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) (citing *K–Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013)). The Ninth Circuit reviews dismissals under Rule 12(b)(6) *de novo*, accepting all factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. *Barrett v. Belleque*, 544 F.3d 1060, 1061 (9th Cir. 2008) (citing *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007)).

Patent eligibility under § 101 is an issue of law that may contain underlying issues of fact. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). We review the district court's ultimate conclusion on patent eligibility *de novo*. *Id.* To determine whether a patent claims eligible subject matter, we follow the Supreme Court's familiar two-step framework. *See Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70–73 (2012). First, we determine whether the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 573 U.S. at 217. If not, then the claims are patent-eligible and the inquiry is over. If so, we proceed to the second step and determine whether the claims nonetheless include an "inventive concept" sufficient to "'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 566 U.S. at 72, 78). To recite an "inventive concept,"

at step two, a patent must do more than recite an abstract idea "while adding the words 'apply it.'" *Alice*, 573 U.S. at 221 (quoting *Mayo*, 566 U.S. at 72). "[S]imply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 566 U.S. at 82. Likewise, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223.

At step one, Boom argues that the claims are not directed to an abstract idea, but rather to a technological improvement over prior art systems for confirming and processing online payments. Specifically, Boom argues that the elements of the claims provide specific steps for processing an online payment, and therefore are not directed to the general concept of escrow. Stripe responds that the claims are directed to an abstract idea because they recite nothing more than payment escrow executed by a computer system and that the specific steps of the claims are nothing more than the steps necessary to perform that function.

We agree with Stripe that the claims are directed to the abstract idea of payment escrow. They only describe steps of passing information back and forth by a computer. The very purpose of the patents, as explained in the written description, is verifying consummation of a transaction before releasing payment by a third party, which is the definition of escrow. *See* MERRIAM-WEBSTER, www.merriam-webster.com/dictionary/escrow (defining "escrow" as "money . . . held in trust by a third party to be turned over to the grantee only upon fulfillment of a condition"). Here, payment is held by the third-party Internet-based computer system and released to the seller only upon the fulfillment of a condition—specifically, upon receiving confirmation that the items sold have been transferred to the buyer. Indeed, the claims are reminiscent of those at issue in *Alice*,

in which the Supreme Court held that claims directed to "exchanging financial obligations between two parties using a third-party intermediary to mitigate settlement risk" are directed to an abstract idea. *Alice*, 573 U.S. at 219.

Boom relies on multiple aspects of the claims in asserting the non-abstract nature of the claims, none of which are availing.  First, Boom relies on the use of the buyer identifier as the specific means for confirming consummation of the transaction to distinguish its system from conventional escrow.  But use of an identification code known only to the buyer and the third party to verify a transaction could be performed just as readily without the use of computers and cannot be said to be a "technological" solution that improves the functioning of a computer system.  We agree with the district court that, at most, the use of an identification code does nothing more than overlay a second layer of abstraction—specifically, identity authentication—on the escrow procedure described by the claims.  Boom also relies on the specificity of the claims to establish eligibility.  In its briefing, Boom describes the allegedly specific steps of the claims as "receiv[ing] a buyer's payment information, and thereafter, upon a later receipt of a request by the buyer to purchase an item online, generat[ing] a transaction-specific buyer acceptance identifier that is then used not only in lieu of the buyer's payment information but also as the means for the seller to indicate confirmation of the transaction when the seller later returns a corresponding identifier." Appellant's Br. at 28–29.  However, we agree with Stripe that these steps only explicate the necessary steps of an escrow arrangement and do not change the direction of the claims.  Accordingly, we conclude that the claims are directed to an abstract idea at step one.

Having concluded that the claims are directed to an abstract idea, we consider whether they describe an inventive concept at step two.  Boom argues that use of the buyer identifier constitutes an inventive concept because it "increase[s] online payment security without making the

payment flow burdensome on either the buyer or the seller" by "removing the need for any static buyer payment information, such as credit card numbers." Appellant's Br. at 48. Boom also argues that the order and timing of the specific steps of the claims are inventive improvements over prior art systems. Boom argues that, at a minimum, it has pleaded allegations that the elements of the claims are not routine and conventional sufficient to preclude dismissal under Rule 12(b)(6).

Stripe responds that the alleged inventive concepts identified by Boom are nothing more than the same abstract ideas identified at step one and that Boom's bare assertions that the claim elements are not routine or conventional are insufficient to create a genuine issue of material fact at step two.

We agree with Stripe. As we explained with respect to step one, the order and timing of the claim elements are merely the necessary steps of executing payment escrow and so do not constitute an inventive concept. Similarly, the use of the buyer identifier to confirm consummation of the transaction serves only to authenticate the transaction and is not rooted in a technological problem or solution. In any event, the written description acknowledges that such confirmation codes were routine prior to the date of the invention. '084 patent col. 2 ll. 7–11 (describing shipment confirming information as "reliable confirmation that the transaction has been consummated"). Accordingly, we conclude that the patents do not recite an inventive concept sufficient to transform the claims into patent-eligible subject matter.

We also agree with Stripe and the district court that Boom's allegations that the limitations of its claims are not routine or conventional do not preclude dismissal under Rule 12(b)(6). In its amended complaint, Boom makes numerous allegations that the patented inventions are not routine or conventional at the time of the invention. But

while we are required to accept the plaintiff's allegations as true in reviewing the grant of a motion to dismiss, "[w]e disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)." *Simio, LLC v. FlexSim Software Prods., Inc.*, ___ F.3d ___, 2020 WL 7703014 at *9 (Fed. Cir. 2020). That is the case here. Boom's amended complaint repeatedly asserts that its claims are not routine or conventional but does not provide plausible factual allegations to support those assertions. *See* Amended Complaint, *Boom! Payments, Inc. v. Stripe, Inc.*, No. 3:19-cv-00590-VC (N.D. Cal. July 10, 2019), ECF No. 44, at 10 ¶ 29 ("The particularized manner in which the 'transaction specific buyer acceptance identifier' and 'transaction consummation completion identifier' of the claims of the Asserted Patents are generated, stored, used, and related to other identifiers was not well-understood, routine, or conventional at the time of Mr. Bogaard's inventions."); *id.* at 12–13 ¶ 38 ("The claims include specific limitations and a combination of limitations that are inventive and which were not well-understood, routine, conventional activity in the field at the time of the inventions."). Because Boom's amended complaint includes only conclusory allegations, the district court did not err in granting Stripe's motion to dismiss.

Finally, we conclude that the remaining claims of the asserted patents are directed to substantially similar subject matter as the three claims specifically addressed by the district court, and therefore affirm the dismissal of Boom's complaint with respect to all claims. Boom asserts that the district court's decision applies only to the three claims specifically addressed by the court's order, but we reject Boom's contention as overly formalistic. "Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer*, 881 F.3d at 1365. Here, it is evident that the three claims were

treated as representative even though the district court did not specifically denote them as such. Having determined that certain specific claims of the asserted patents are ineligible, it would defy reason to allow substantially identical claims to remain the subject of further litigation. This conclusion is not inconsistent with the basic proposition that only asserted and litigated claims are before an appellate court for review. Boom did not limit its infringement allegations to only the three claims cited in the district court opinion, instead alleging infringement of "at least" claim 7 of the '084 patent, claim 7 of the '857, and claim 1 of the '840 patent. *See* Amended Complaint, *Boom! Payments, Inc. v. Stripe, Inc.*, No. 3:19-cv-00590-VC (N.D. Cal. July 10, 2019), ECF No. 44, at 22 ¶ 66, 34 ¶ 90, 46 ¶ 114. And in its motion to dismiss, Stripe argued that those claims are representative and sought dismissal of all claims. *See* Motion to Dismiss Plaintiff's First Amended Complaint, *Boom! Payments, Inc. v. Stripe, Inc.*, No. 3:19-cv-00590-VC (N.D. Cal. Aug. 12, 2019), ECF No. 51, at 4. Because the remaining claims are substantially similar and directed to the same abstract idea, we affirm the district court's dismissal of Boom's complaint with respect to all claims of the '084, '857, and '840 patents.

## CONCLUSION

We have considered Boom's remaining arguments but find them unpersuasive. For the foregoing reasons, the judgment of the district court is *affirmed*.

## AFFIRMED